# IN THE COURT OF APPEALS OF IOWA

No. 16-0261
Filed May 17, 2017

**STATE OF IOWA,**
　　　　Plaintiff-Appellee,

**vs.**

**MIREYA BIANCA BALDERAS,**
　　　　Defendant-Appellant.
_____

Appeal from the Iowa District Court for Johnson County, Mitchell E. Turner, Judge.

A defendant appeals her sentence after pleading guilty to four crimes related to injuries suffered by her young son, who died after he was left in the care of her boyfriend. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Bradley M. Bender, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Tyler J. Buller, Assistant Attorney General, for appellee.

Considered by Vaitheswaran, P.J., and Tabor and Mullins, JJ.

**TABOR, Judge.**

Mireya Balderas asks to be resentenced. She alleges the district court improperly considered unproven facts when imposing an indeterminate ten-year prison term and three concurrent indeterminate five-year prison terms following her guilty pleas to one count of neglect of a dependent person and three counts of child endangerment resulting in bodily injury. The State originally charged Balderas with child endangerment resulting in death in connection with fatal injuries suffered by her twenty-month-old son, M.B. She contends the district court's references to "unproven conduct and the death of her son" require us to vacate her sentences.

Because mentioning M.B.'s death was not verboten and the district court expressly denied basing its chosen sentence on the greater offense dismissed by the State, we find vacation of her sentences is unwarranted.

## I.    Facts and Prior Proceedings

Twenty-month-old M.B. was pronounced dead at the University Hospitals' Emergency Trauma Center on April 30, 2012, according to the minutes of evidence. The child had been in the care of Jorge Perez, who was the live-in boyfriend of M.B.'s mother, Mireya Balderas. Perez was watching M.B. while Balderas was attending an alternative high school, and he called 911 when the child stopped breathing.

Investigators responding to the hospital documented bruising to the child's face, head, torso and buttocks, as well as a split upper lip and torn frenulum. An autopsy revealed the child's cause of death was blunt-force injuries to the head. The autopsy report documented numerous injuries of various ages, including

(1) fractured ribs, (2) "extensive subdural and subarachnoid hemorrhage (presence of blood on the surfaces of the brain)" and (3) contusions to the abdomen resulting in injuries to the liver and adrenal gland.

The State filed a trial information in June 2012, charging both Perez and Balderas with child endangerment resulting in death, a class "B" felony, in violation of Iowa Code section 726.6(1) (2011). The information alleged Balderas had "permitted, condoned and participated in [M.B.'s] continuing physical abuse at the hands of Jorge Jesus Perez, which abuse resulted in [M.B.'s] death."

In October 2015, the State filed an amended and substituted trial information, charging Balderas with neglect of a dependent person, a class "C" felony, in violation of Iowa Code section 726.3, and three counts of child endangerment causing bodily injury, class "D" felonies, in violation of Iowa Code sections 726.6(1)(a) and (e). The neglect count alleged Balderas

> as the mother of a child, did knowingly or recklessly expose such child to a hazard or danger against which such child could not reasonably be expected to protect such child's self or deserted or abandoned such child, knowing or having reason to believe that the child would be exposed to such hazard or danger, to wit: *defendant left her [twenty] month old son [M.B.] in the care of Jorge Perez, whereupon [M.B.] died of blunt force trauma to the head*.

The three child-endangerment-causing-bodily-injury counts alleged Balderas allowed Perez to inflict injuries on M.B. resulting in (1) "fractured left ribs," (2) head trauma including acute subdural hemorrhage, and (3) abdominal trauma, including harm to "the liver, right adrenal gland, diaphragm, and deep abdominal fat."

Balderas entered *Alford* pleas[1] to those four offenses in return for the State's dismissal of the class "B" felony count of child endangerment resulting in death. Her attorney made the following statement at the plea hearing:

> [G]iven that [M.B.] died at the hand of Mr. Perez on April 30 and that there was evidence of other injuries that occurred leading up to that day, that although Mireya is not admitting that she did anything knowingly or recklessly, a jury could well find that the series of injuries leading up to death would be a basis—a circumstantial basis to conclude that the knowingly element of the offenses could be proved beyond a reasonable doubt.

To provide a factual basis for each of the offenses, defense counsel offered a copy of M.B.'s autopsy report to supplement the information included in the minutes of evidence.

In January 2016, the district court held sentencing. Early in the hearing, defense counsel disputed a statement in the presentence investigation (PSI) report justifying the recommendation of a prison sentence based on the fact that her offenses "resulted in the death of a child." Counsel clarified: "That's incorrect, both legally and factually. She wasn't charged with an offense that resulted in the death of a child." The court noted the defense objection.

Defense counsel presented evidence on the head injury that M.B. suffered on the day he died while in the care of Perez,[2] as well as Balderas's family situation, school background, and her struggle with anxiety. Defense counsel asserted Balderas could not have "reasonably foreseen what Mr. Perez was going to do to [M.B.] on the morning that he died." Counsel argued, because of

---

[1] An *Alford* plea allows a defendant to consent to the imposition of a sentence without admitting participation in the crime. *North Carolina v. Alford*, 400 U.S. 25, 37 (1970).
[2] The record shows Perez pleaded guilty to child endangerment resulting in death and received an indeterminate fifty-year prison sentence.

her own mental-health issues, Balderas "wasn't able to move out before Mr. Perez, suddenly and without warning, escalated his conduct toward the boy and caused his death."

The defense asked the court to grant probation. The PSI recommended concurrent terms of incarceration on the four felony counts. The State asked for the sentences to run consecutively.

In her allocution, Balderas told the court: "I realize that as a mother, I failed." She also said: "I was young and stupid. Everybody makes mistakes. Unfortunately, my lesson came with the loss of my angel, my child." She then asked the court for a chance to fulfill her potential.

In sentencing Balderas, the court recognized:

> The State has not charged you with inflicting the injury on your son, specifically inflicting the injury on your son that ended up with him dying of it. I want you to understand that his death technically has nothing to do with the charges to which you have entered guilty pleas. You would be facing the same charges had he only had bruises as you have in this case, in the charges, even though he eventually died of the injuries.

The court continued: "The point is a tiny life was lost, with all of its potential and all of its future. And while you didn't cause that loss of life, your inaction made it possible."

The court rejected defense counsel's suggestion that Perez's fatal abuse of the child was "a sudden action that occurred without warning," telling Balderas:

> I'm not saying that you are a horrible, horrible person, but you made decisions that eventually resulted, not only—Let's just set aside the fact that your son died. You made decisions that allowed somebody else to hurt your son in other ways, the broken ribs, the bruising.

The court sentenced Balderas to an indeterminate term not to exceed ten years on the neglect-of-a-dependent-person count, and indeterminate five-year terms on the child-endangerment counts—all to be run concurrently.

The court referenced the "facts and circumstances" discussed in the PSI, and further clarified the reasons for imposing a prison sentence:

> I want to impress upon you that I'm not sentencing you because I believe that you caused the injuries from which your son died. You're being sentenced because of your inability or unwillingness to serve as your son's protector, to supervise him, to not allow someone else that you knew to be abusing him, to abuse him.

The court again stressed "it's not the severity of the ultimate injury that convinces me that this sentence is the appropriate sentence." The court returned to the "ongoing" nature of the abuse, reasoning:

> [T]here's an old saying that you can die from a million paper cuts but no one paper cut will kill you. You had an obligation not only to protect him from death—fatal injuries, but from all injuries, big, small, and you didn't do that. And you had warning, and this was not something that happened overnight.

The court also told Balderas it was taking into the account that she was just eighteen years old at the time of the crimes, her lack of a prior criminal record, as well as the nature of the offenses. The court told Balderas the sentence would provide "the maximum opportunity to obtain rehabilitation, that being that you will be able to address your mental health issues while you're in prison. You'll also be able to get education, which you had difficulty following through on in the past." Balderas now appeals her sentence.

## II.    Scope and Standard of Review

We review sentencing proceedings for errors at law. Iowa R. App. P. 6.907. We will not vacate a sentence on appeal "unless the defendant

demonstrates an abuse of trial court discretion or a defect in the sentencing procedure" such as the district court's consideration of impermissible factors. *State v. Lovell*, 857 N.W.2d 241, 242–43 (Iowa 2014). A sentencing court may not impose a more severe sentence for a lower crime on the ground that the accused committed a higher crime that was originally charged unless the facts properly before the court demonstrate the accused actually committed the higher crime or the accused admits it. *See State v. Thompson*, 275 N.W.2d 370, 372 (Iowa 1979).

We presume the district court properly exercised its sentencing discretion, and Balderas bears the burden to overcome that presumption by affirmatively showing the judge relied on an unproven offense in imposing her sentence. *See State v. Hansen*, 344 N.W.2d 725, 730 (Iowa Ct. App. 1983).

### III.    Analysis of Impermissible-Consideration Claim

Balderas argues the district court's explanation for its sentencing decision "reveals it considered unproven facts and the dismissed charge allegedly committed by Balderas." Balderas contends, "while the court claimed to be ignoring the fact Balderas was not being sentenced for inflicting the injury to her son, [it] nonetheless referenced the death of her son throughout its reasoning while it imposed Balderas's sentences." Finally, Balderas claims the district court "compound[ed] matters" by considering the "further unproven fact" that she should have known M.B. had broken ribs during the weeks before his death.

On this record, M.B.'s death was not an unproven fact. The district court was not required to ignore the reality that M.B. died at the hands of Balderas's boyfriend. Balderas pleaded guilty to the neglect-of-a-dependent-person count in

the amended trial information that identified her "knowing or reckless exposure" of M.B. to danger as leaving the twenty-month-old in Perez's care "whereupon [M.B.] died of blunt force trauma to the head." Thus, the boy's death from blunt-force trauma to the head was established in the record and acknowledged by Balderas's own allocution and by defense counsel's argument that Balderas could not have anticipated her boyfriend's sudden escalation of violence toward M.B. *See State v. Black*, 324 N.W.2d 313, 316 (Iowa 1982) (noting sentencing court may consider facts contained in the minutes that are admitted to or otherwise established as true). Accordingly, the district court's references to M.B.'s death are not grounds for vacating the sentence.

Moreover, Balderas has not affirmatively shown the district court, when deciding to impose a prison sentence rather than probation, impermissibly relied upon the unproven, higher charge of child endangerment resulting in death that she originally faced. In fact, several times during its remarks, the district court definitively disavowed consideration of the child's death—as an element of her offenses—in reaching its sentencing decision.

This is not a case like *Lovell*, where the sentencing court initially cited an impermissible sentencing factor before attempting to disclaim the reference later in the hearing. 857 N.W.2d at 243 (declining to speculate regarding the influence of the unadmitted salacious fact, which was deemed denied). Here, the district court made clear from the outset that it was not sentencing Balderas to prison because it believed that she caused the injuries resulting in her son's death. In addition, the court's discussion of M.B.'s rib fractures did not implicate the dismissed class "B" felony charge; rather, it implicated one of the child-

endangerment counts to which Balderas pleaded guilty and was responsive to the defense argument that she could not have anticipated Perez's intensifying abuse of M.B.[3] We will not draw an inference of improper sentencing considerations that are not plain on the record. *See State v. Formaro*, 638 N.W.2d 720, 725 (Iowa 2002). Balderas is not entitled to a new sentencing hearing.

**AFFIRMED.**

---

[3] The court rejected the notion that Perez's final blows to the child came without warning:

> At a minimum, you had a [twenty]-month-old child who had broken ribs for one to three weeks before the incident that caused him to perish. Now, I'm no doctor, and I don't know whether or not one would see a lot of outward signs of broken ribs. I would expect that one probably would. But even if one didn't, you were his mother. You think a baby with five broken ribs is going to act the same as a baby with no broken ribs? That didn't happen overnight.